Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 5024 | **DATE** | September 5, 2001 |
| **CASE TITLE** | Factor VIII or IX Concentrate Blood Prods. Litigation (MDL-986) WALKER v. BAYER CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The fractionators' motion for sanctions against Sylvan Hart 278H is allowed, and the court will take under advisement the amount of the monetary sanction to be imposed. Fractionators may submit by September 26, 2001 additional documentation requested, and Mr. Hart may have October 17, 2001 to object or otherwise comment on the amount requested. The motion of the fractionators for sanctions against the Benjamin law firm [ ] is denied. The motion of the Benjamin law firm and Sylvan Hart for sanctions against the law firm of Sidley & Austin and Sara Gourley, Esq. 290H is denied. ENTER MEMORANDUM OPINION.

(11) X [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | SEP 13 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | FILED FOR DOCKETING | | 488 |
| | Mail AO 450 form. | 01 SEP 10 PM 4:32 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/5/01 | |
| KAM | courtroom deputy's initials | | date mailed notice | |
| | | | KAM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

(Reserved for use by the Court)

96-5024.014

September 5, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | | |
|---|---|---|
| IN RE | ) | MDL-986 |
| | ) | |
| FACTOR VIII OR IX | ) | No. 96 C 5024 |
| CONCENTRATE BLOOD | ) | 93 C 7452 |
| PRODUCTS LITIGATION | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**
**CONCERNING CROSS MOTIONS FOR SANCTIONS**

One of the few remaining tasks in this class action is for the court to rule on three motions for sanctions which have been filed in connection with the claim of Sylvan Hart for a $100,000.00 settlement share. The defendant fractionators contend that Hart filed a fraudulent claim with the Claims Administrator and they seek sanctions against both Hart and the Benjamin law firm, which represents Hart, on that account. For their part, Hart and the Benjamin firm have filed for sanctions against the law firm of Sidley & Austin and attorney Sara Gourley, attorneys for one of the fractionators, for having brought the sanctions motions against Hart and the Benjamin firm.

We will deal with these motions separately.

488

## The Fractionators' Motion for Sanctions
## Against Sylvan Hart and the Benjamin Law Firm

The gist of the motion for sanctions against Sylvan Hart is that he submitted false documentation to support his claim that he is HIV-positive and had used factor concentrate manufactured by one or more of the fractionators during the class period. Some of the documentation, while highly questionable, is not so clearly fraudulent as to justify the imposition of sanctions. Further investigation might develop sufficient evidence of fraud in connection with the B.J. Moszczynski evaluation dated October 27, 1981, but we are not presently persuaded that the document is a forgery nor that the Moszczynski who purportedly wrote the report is the same person who had died some years earlier. Moreover, the report has not been shown to be false as far as the diagnosis is concerned, because it refers only to a "viral presence," not to HIV.

However, we are wholly satisfied that at least one of the documents submitted by Hart in connection with his claim to a settlement share is fraudulent. This is the letter of March 21, 1984 on the letterhead of Nathan Portnoy, M.D., and bearing the purported signature of Nathan Portnoy, M.D. The letter states that:

> Mr. SYLVAN HART is a Factor XIII hemohiliac [sic] who has also been diagnosed with HIV, subsequent to the administration of cryoprecipitate blood plasma and/or

plasma concentrates.

The fractionators have submitted persuasive evidence that the Portnoy letter is not what is purports to be. They have submitted the affidavit of David J. Volsky, a virologist who specializes in HIV research, to the effect that the term "HIV" was not used until early 1986, two years after the date of the Portnoy letter. Dr. Volsky also states in his affidavit that the FDA did not license an HIV antibody test until early 1985, which makes it highly unlikely that Hart could have been "diagnosed with HIV" prior to March 21, 1984, the date of the Portnoy letter.

Robert E. Walsh, an investigator retained by the fractionators, has filed an affidavit that, according to his investigation, a person named Nathan Portnoy, one of whose mailing addresses was 320 West 87th Street, New York City, was born on December 1, 1895 and died in October of 1985.[1]

If a Nathan Portnoy was practicing medicine at 320 West 87th Street, New York City, and had Mr. Hart, a New York resident, under "[his] general care," it seems highly likely that Dr. Portnoy would have had a license to practice medicine in the State of New York. However, the State Education Department of the State of New York

---

[1] This information would be even more useful if we knew what kind of structure was located at 320 West 87th Street. Is it an office building? Did anyone named Portnoy ever have a medical office there or practice medicine there? We are somewhat puzzled as to why Mr. Walsh's investigation did not take this next step. However, for additional reasons we will explain shortly, we are still persuaded that the Portnoy letter, and the information in it, is bogus.

has certified that no one by the name of Nathan Portnoy has ever received a license to practice medicine in the State of New York.

The credibility of the Portnoy letter, and Mr. Hart's claim to be HIV-positive (which is supported, in the final analysis, only by the Portnoy letter) is dispatched by the fact that Hart has been tested and found to be HIV-<u>negative</u>. The test was ordered by this court after it became apparent that we needed the result in order to know whether to lift the injunction and permit Hart to proceed with his New York lawsuit. It was not an easy task to corral Hart for the test, or later to obtain his authorization for the physician to release the result, but we finally did obtain the result (Ex. 1 to fractionators' motion), showing that Hart is "negative for antibodies to HIV-1." Hart's explanation for this is that his HIV is "in remission," which is nonsense. Neither Hart nor the Benjamin firm on his behalf has submitted any medical support for this "remission" theory, and the fractionators have submitted the affidavit of Rodger D. MacArthur, M.D., an HIV expert, to the effect that a person who becomes infected with HIV will always thereafter test positive for HIV antibodies, even if his viral load diminishes to a level that cannot be measured. (Fractionators' Ex. 38).

The clear conclusion, then, is that Hart is not now and never has been HIV-positive. His intent to defraud the fractionators and

the court is evidenced by his submission of the Portnoy letter, which cannot be anything but a fraud. We find by clear and convincing evidence that Sylvan Hart attempted to defraud the fractionators and this court by falsely claiming to be HIV-positive when he knew he had no basis for such a claim.

The fractionators have moved for sanctions against Hart pursuant to this court's inherent power to impose sanctions for fraudulent conduct. Chambers v. Pasco, Inc., 501 U.S. 32 (1991). We believe this is an appropriate case for the exercise of that authority.[2]

The fractionators have been required to incur fees and costs in their successful effort to demonstrate the fraudulent nature of Hart's claim. We believe the assessment of at least some portion of those fees and costs against Hart is the most appropriate sanction. In fact, we can think of no other sanction that would be meaningful.[3]

---

[2] We agree with the fractionators that because Hart's fraud involved a course of conduct and was not limited to particular filings, the court's inherent authority, rather than Rule 11 of the Federal Rules of Civil Procedure, is the more appropriate vehicle for the imposition of sanctions. See Chambers, 501 U.S. at 50-51.

[3] The fractionators suggest that we refer the matter to the United States Attorney for criminal investigation. This sounds like a good idea, but this court's experience is that such a reference would be futile. Over the years, we have referred several instances of clear cut perjury, in both civil and criminal cases, to the United States Attorney for this district for criminal investigation. The office has declined to undertake any such investigation, and, in fact, has stated that perjury prosecutions are too much work with too little "return," which we interpret to mean too little in the way of statistics and publicity. Considering that the integrity of the judicial process depends upon the disposition of witnesses to tell the truth, this attitude of the United States Attorney's Office is unfortunate.

The fractionators request that they be reimbursed for the cost of Hart's court-ordered HIV test, and this request is granted. However, we do not know what the costs were, and the fractionators should submit the bill or other documentation as to the amount. The fractionators also request that Hart pay the fees of the firms they hired to investigate the claim. These bills, totaling $22,092.64, are appended to the fractionators' Reply Brief (Ex. 45), but they are lacking in specifics as to what work was done and what the hourly charges were. The court would like to know, for instance, what the charges were for the investigation of the Portnoy letter, which resulted in evidence the court finds persuasive, and how much is attributable to matters such as the Moszczynski letter, which the court considers less probative. If the fractionators will submit more specific information, the court will assess Hart with the cost of the HIV test as well as a reasonable portion of the investigative fees.

### Fractionators' Motion for Sanctions
### Against the Benjamin Law Firm

The fractionators move to sanction the Benjamin law firm[4] under the court's inherent power and also pursuant to 28 U.S.C. § 1927. The theory is that Benjamin was negligent in failing to investigate Hart's claim and vexatiously extended the proceeding

---

[4] The lawyers in the firm who handled Hart's case were Ronald Benjamin and Sharon McDermott, which, for convenience, we will refer to as "the Benjamin firm" or "Benjamin."

long after it should have known that the claim had no basis.

The court understands the fractionators' position, but it takes a different view of the matter. The fractionators concede that Benjamin had nothing to do with Hart's filing of the false claim and the fraudulent documentation. Benjamin's principal undertaking on Hart's behalf was to file a lawsuit in New York, whose law permits recovery for exposure to HIV even if no infection results. Benjamin appealed to the Seventh Circuit from this court's injunction against other lawsuits, and, when the Special Master recommended disallowance of Hart's <u>Walker</u> claim for insufficient documentation, Benjamin objected to the Special Master's recommendation. While arguing that the documentation should be considered sufficient, or at least that the deficiency in the documentation was in part the fault of the fractionators, Benjamin's principal argument was that it would be a violation of due process for this court to deny the <u>Walker</u> claim and at the same time restrain the New York lawsuit. We agreed with Benjamin's argument that if Hart could not prove he was HIV-positive, he was not a class member and should be permitted to proceed in New York. We stayed our ruling to see whether the Court of Appeals might remand Hart's case to allow us to make a determination as to whether he qualified as a class member. The case was remanded, and it was shortly thereafter that we ordered Hart to take the HIV test, which proved negative. We denied his claim and vacated the

injunction as to him, freeing him to proceed with the New York suit.

The tenor of Benjamin's argument to us was that if Hart did not satisfy class requirements he should be permitted to proceed in New York. Our impression was that Benjamin was content to let us make the call, but was more interested in proceeding in New York than in seeing Hart accept a $100,000 that would preclude the pursuit of larger damages in New York. It is true, however, that Benjamin argued, in the alternative, that Hart had submitted sufficient evidence of HIV infection, and should be entitled to a <u>Walker</u> payment. The question is whether this argument was sanctionable.

It is important to avoid the influence of hindsight. The Portnoy letter stated that Hart had been found to be HIV-positive. There is nothing facially suspect about the letter, and there is no evidence that Benjamin had any reason to question the fact that Hart's treating physician had vouched for his HIV infection. Benjamin did not know the facts that were later turned up in the Portnoy investigation, nor is there any reason that Benjamin would have conducted its own investigation into the Portnoy letter. Neither did Benjamin have the benefit of a laboratory test that showed Hart to be HIV-negative. That test did not occur until most of the litigation activity complained of by the fractionators had already taken place.

The fractionators seem to think that Benjamin should have viewed Hart with suspicion from the outset. Hart claimed to be unable to locate his hospital records. But, with the Portnoy letter, and the apparently confirming letter of Moszczynski (the fact that Hart had a "viral presence") it was not sanctionable for the Benjamin firm to omit a search for additional medical records. Hart's situation should be viewed in context. No one disputes that he is a hemophiliac. Benjamin knew that thousands of hemophiliacs had used factor concentrate and that thousands of them had been infected with HIV as a result. Hart was not presenting an unusual claim, but rather a claim that was completely consistent with his apparent background.

It may be that at some point Benjamin should have investigated the plausibility of Hart's contention that his HIV is "in remission." The fractionators have been able to disprove this by retaining an expert in the field. If Benjamin was negligent in failing to check out the "remission" claim, it is negligence which, in the total picture, caused very little damage. By the time Hart found it necessary to rely on "remission," it was a blip on the screen. We decline to sanction Benjamin for its argument on this subject, which was virtually peripheral.

Viewing Benjamin's conduct in the light of what it knew or should have known at the relevant times, we find that Benjamin is not subject to sanctions.

### Benjamin's Motion for Sanctions
### Against Sidley & Austin and Sara Gourley

Benjamin moves for sanctions against Sidley & Austin and Sara Gourley on several grounds. One ground is that the fractionators seek sanctions against Sylvan Hart under 28 U.S.C. § 1927, although that statute applies only to attorneys. Benjamin misreads the fractionators' motion, which seeks sanctions against Hart on the basis of Rule 11 and this court's inherent power. The motion does not seek sanctions against Hart under Section 1927.

The balance of the Benjamin motion is an argument that Sidley & Austin and Sara Gourley (who signed the fractionators' sanctions motion) should be sanctioned under Rule 11 for having filed unwarranted sanctions motions against Hart and Benjamin. Benjamin's argument is substantially the same as the argument it presents in opposition to the fractionators' sanctions motions. For the reasons explained above, the sanctions motion brought against Hart was altogether justified. The sanctions motion brought against Benjamin is not so lacking in merit as to be subject itself to Rule 11 sanctions.

### CONCLUSION

The fractionators' motion for sanctions against Sylvan Hart is allowed, and the court will take under advisement the amount of the monetary sanction to be imposed. The fractionators may submit by September 26, 2001, the additional documentation requested, and Mr.

Hart may have until October 17, 2001 to object or otherwise comment on the amount requested. The motion of the fractionators for sanctions against the Benjamin law firm is denied. The motion of the Benjamin law firm and Sylvan Hart for sanctions against the law firm of Sidley & Austin and Sara Gourley, Esq. is denied.

Date:    September 5, 2001

ENTER:   _____
         John F. Grady, United States District Judge